May it please the Honorable Court, Richard Schoenfeld appearing on behalf of the Appellant, Joel Ausbie. I'd like to try to reserve three minutes for rebuttal. The first issue I would like to address, in my opinion, is the most significant issue, and that is the constitutional equal protection violation that occurred as a result of what's commonly referred to as a Batson violation. In the jury selection process in this case, Mr. Ausbie is African American. His counsel noted and commented on the record that the panel only had four African American jurors on it. The court then correctly noted that as long as the panel is selected at random from people in the community, that there is no issue as far as how many African Americans are on that panel and whether or not it prorationally is consistent with the community. Mr. Stein, defense counsel at the time, then said, I am going to challenge all of them, reverse Batson. Jury selection then commenced, and at the conclusion of the jury selection, at the time But he gave a reason for that position, didn't he? He didn't give a reason for his initial position that he was going to challenge the only four African American jurors. Ultimately, when they got to the peremptory challenge stage, the government raised an issue to the court and said, we need to approach. We are concerned because Mr. Stein struck the only two remaining African American jurors that made it to the peremptory challenge stage. The prosecutor then said, we want to make sure that he did it for a strategic reason. Strategic reason falls nowhere in the Batson analysis. At that point in time, Mr. Stein responded and said, I'll give you the reason, sympathy for the victim. The victim is also African American. Neither the prosecutor nor the court at that point employed the actual Batson analysis. As a matter of fact, the defense lawyer said, I'm not doing Batson. I'm not raising Batson. So the defendant's attorney never raised it as a Batson issue and so stated, right? Yes, the defense attorney is the one who caused the Batson violation. But it seems to me that in this case that the more appropriate challenge really is ineffective assistance of counsel. Yeah. I'm going to disagree and I'll explain why. All right. But didn't he go further? Didn't he say not only that the defendant and the victims were all black, but he's challenging the jurors because they would be more sympathetic to the victims? That is exactly his reason. But the reason that they would be more sympathetic to the victims, in his opinion, is based on race. And when we look at the Batson case, there can be no explanation as to why you challenge a juror if it's based on race. When we start with Batson, in that case it was the prosecutor. What do you mean it's based on race? The defendant is black and the victims are black. Yes. So what does that mean? The defendant can't ever challenge any blacks? No, they can, but it has to have a race-neutral explanation. Why isn't that a race-neutral explanation? Because these jurors would be sympathetic to the prosecution. And that's exactly, I'm going to quote from the Batson case, this court has rejected the view that assumptions of partiality based on race provide a legitimate basis for disqualifying a person as an impartial juror. And that's precisely what's... No, but that was, much as I respect Batson, that comment wasn't made, you know, in a black-on-black situation. It doesn't matter. Well, why not? I'll explain. Batson starts with a prosecutor striking an African-American juror with an African-American defendant. That's when the court says there's a three-part test. Is the defendant part of that race? That's the first part. Is the juror part of that race? That's the second part. Batson then says the burden shifts to the person who employed that challenge to provide a race-neutral basis. We then go to Georgia v. McCollum. In that case, there is a white defendant who's accused of battering a black individual. The white defendant's lawyer strikes African-American juror. The issue comes up that you're striking the juror based on race. The first question that the court had to tackle, and the district court was reversed on this, is how is a defendant held to the constitutional standard of protecting, you know, the jurors and the defendant from equal protection? They're not a state actor. That was the district court's finding. Supreme Court in Georgia v. McCollum reverses and said because this is such an important part of the judicial process, selecting a jury that is impartial, a jury of your peers, you are acting as a state actor because you are upholding our justice system. And when you discriminate against a juror based on race, you are causing an equal protection violation for the juror and, in this case, an equal protection violation for the defendant. But what happens . . . I understand that there can be a Batson violation with race of everybody being the same. But what happens when he says, I'm not making a Batson violation? Do you have any case that says, where the defense attorney basically says, I'm not making a Batson violation claim, that the district court still has some sui sponte obligation to jump in? Yes. Okay. In what case is that? Starts with Batson, goes to Georgia McCollum, and then if you look at the Potenciano case, which is cited in a footnote by the government, what that case says is that . . . Which court? Ninth Circuit. Potenciano is the Ninth Circuit, P-O-T-E-N-C-I-A-N-O, cited by the government. And what that one says is when the court fails to properly exercise the Batson analysis, it is reviewed de novo.  Well, but see, that's a different case than the one I'm talking about. My case I'm talking about is where that's when the court doesn't do it right. And that's what happened here, Your Honor. That's when the court doesn't do it right. But what happens when the defense attorney says, I'm not making that challenge? The government made the challenge here. Well . . . Wait a minute. The government made a challenge in this case? The government said, we need to approach because Counsel Stein said he was going to reverse Batson and strike all jurors. And then he did, in fact, strike all African-American jurors. So the government . . . The government wants to know is there a Batson challenge because the government is trying to protect the record. Because if there is a Batson challenge, the district court better do it right. So the defense lawyer then says, no, there is no Batson challenge. And the defense lawyer didn't object to the two jurors struck by the government either, right? The jurors that were struck by the government were African-American. They were not? They were not, no. No, no, they just didn't make it to the final panel. So there were four to start. That was just through natural process. Maybe there were more jurors than necessary. So the actual 14 that got to the box, there was only two African-Americans left. And then they start the preemptory challenge process. So why aren't we getting back to what my colleague said, that this is inefficient work, inappropriate work by the defense lawyer? The lawyer should have done it. And that's really not before us here. We don't have that. Because it's . . . Isn't that the proper way to get to this? No. Respectfully, it's a more significant issue than that because the jurors were openly discriminated against. It was brought to the court's attention. The government was clearly aware of it. You meet the first two prongs of the Batson that there's a prima facie showing. But . . . And although the defendant's lawyer wasn't the one raising it, at the point in time that both the government and the court were aware that there had been no race-neutral explanation given, the court and the government failed to protect the sanctity of the justice process. They failed to protect the two African-American jurors who were openly discriminated against . . . But a lawyer . . . . . . their legal rights . . . A lawyer, you never know what a lawyer has in mind. They may have some reason why they don't want to do it. And to have the court and the attorney be able to cross-examine the lawyer of why he wants to do this seems to be a little bit of a push . . . It's not. . . . especially in a criminal case. It's not because if we look at the Georgia v. McCollum . . . And I'm going to get to the SmithKline v. Abbott case, which is 2014 from this court. It is required. The court and the government had to ask defense counsel, do you have a race-neutral reason for striking these jurors? Instead, they said, was there strategy? You can't be racist in jury selection based on strategy. And they just did not employ the third prong of the Batson inquiry. And, in fact, his response supported the fact that he was violating the two jurors' equal protection rights as well as Mr. Osby's . . . So, let me ask you this. Can you figure out from the record we have, who are those two jurors? Juror number 6 and 8. And if we look at the sealed excerpt of records, number 5. And that's what the court did in the SmithKline v. Abbott case. The court looked to say, well, let's see if there was anything else in this record that would have justified a race-neutral approach. And the reason the court did that is they were trying to determine, similar to one of the last cases, whether it should be remand or reversal. And in SmithKline, what happened was the juror was openly gay. He was a male. And three times, he referred to his partner as he. In that case, there were two drug manufacturing companies suing each other over price fixing of AIDS medication, HIV medication. During the voir dire, that juror specifically stated that he had friends with HIV and that he had used some of the products that were manufactured by the defendant pharmaceutical company. They get to jury preemptory challenge stage. He's the first juror stricken by the defendants. Plaintiff raises a Batson inquiry challenge, and the court says that sexual orientation does not fall within the purview of equal protection. Okay, but what about these jurors? What about these jurors? What did they say? Nothing. And that's the point. If we look at the record here, there is absolutely nothing to support these jurors being stricken based on sympathy for the victim other than their race. All right, so back up a little bit now. So you're treating this case, and you say we should treat it as a case in which a Batson challenge was properly raised in the trial court. Yes. And, in fact, to a certain extent, addressed. Yes, improperly addressed. Inadequately. It kind of, you know, bothers me in a reverse Batson situation, what, it's up to the government to make the objection or to raise the issue? They did. And that's what was done here? Yes. And that's why it's not waived, and that's why it's not subject to the plain error standard, because we have a record that absolutely establishes everything that I have said. So you're saying, though, that these jurors can be identified in the sealed record? Jurors number 6 and juror number 8, yes. And what about juror number 5? What are you saying about that juror? There was no juror number 5. There's only two jurors at issue. Six and eight. Six and eight. So originally, you know, you get 50 people that come in. We kind of understand that, okay? So there's only two jurors. He telegraphs that he's going to strike any African-American juror, but when it comes to his opportunity, there's only two left on the panel, and that's jurors number 6 and 8. Everybody else was gone not through peremptory challenge. So, yes, you can identify those two jurors. You will find absolutely nothing in the Bardeer process that would indicate that either one of those jurors would have sympathy for the victim but for their race. And Mr. Stein telegraphed before they even started the jury selection process he was going to strike all African-Americans. That is a facet. Was the actual people who were harmed, were they Americans of African descent? Yeah, juror number 6 and 8 were both African. Not the jurors. Oh, the people in the case? Yeah, the named victim in the case was African-American. So you have an African-American defendant, African-American named victim, and two African-American jurors that were stricken. And the explanation after the Batson inquiry commenced was that Mr. Stein didn't want African-American jurors because they would have sympathy for the victim. Because they would be overly sympathetic for the victims. Right, which is a Batson violation. Mr. Schaufel. Still a Batson violation. He struck the jurors based on race, and no race-neutral explanation was provided. In fact, the explanation was based on race. Batson, Georgia v. McCollum. Schaufel. Yes. You have less than two minutes left. I think you'd be better off saving your time. Okay, I'll save my time. Thank you. Because I really like to hear what the government has to say. Thank you. And I assume they're going to oppose your position. Good morning, Your Honors. May it please the Court. Nancy Olson, appearing for the government. I do think this is a plain error question in this case, because there wasn't a proper Batson challenge raised. I do want to point out, as a threshold matter, there is no case that either the government or the jurors have said that there was a Batson violation. When you say a proper challenge wasn't raised, the government raised some kind of a Batson inquiry, right? The government asked a question to see if they should make a Batson challenge. And being satisfied with defense counsel's answer, they did not make a Batson challenge. All right. So, all right. Let's follow that through. But the court made some kind of inquiry, right? When the government made that question? No. So, the government made a threshold inquiry to say, look, there were some comments made. They were a little confusing, because on the one hand, you said there are not enough African Americans. But then you kind of made a remark about striking some of them, and then we weren't going to strike them. But you did. So, what gives? The government wanted to see if there was anything to worry about. As Judge McKeown noted, it was just to protect the record, if there was a problem. And because defense counsel said he had a strategy reason, the government didn't have a prima facie case of Batson, which would have triggered the three-part test. That would have been step one. There really was nothing to go on at that point. I'm not sure that you can just say because he had a strategy reason that you don't have anything to go on in part one. Because if his strategy is, yeah, it's my strategy. I don't like black people, and I don't want any black people on this jury. That's a strategy position, but it's not a defensible under the Constitution position, right? That's absolutely right, Your Honor. If he would have said those words, we would have had a Batson problem. So, what we need to look at is who are these two jurors that he struck? And the SmithKline-Beacham case that was referenced earlier, that's exactly what you do. You go back and look at the answers that these jurors gave, and you see if the strategy explanation holds up. Let me get back to this inquiry that you say the government made. Yes. And the court said nothing? No. So, there's no ruling at all? No. So, you're saying this is a case where no Batson challenge or, you know, request to make a ruling was made. Is that right? That's correct. All right. So, what does that mean? We're here on plain error? We are, because this is an unusual circumstance where the defendant is challenging his own strikes. There's no Ninth Circuit or Supreme Court case that deals with this that any party has found. And so, even if this Court today announced some sort of sua sponte duty, it couldn't be plain error because this would be a new rule. Well, that isn't what the argument is. That wasn't the argument that was made by your adversary. Your adversary says the judge sua sponte has a responsibility at that stage to sense there's a Batson problem that needs to be looked into, and that for that reason we should overturn the case. What's your response? This Court has never said that the district judge needs to sense something. The closest it's come is the Chinchilla case. There's a footnote where this Court suggested to the district court, perhaps if there might be a race issue, the Court could instill some procedures that might look at these things in camera beforehand. But there's no hard and fast rule about what the Court has to do. Let's suggest, let's go to a hypothetical. Yes. Suppose the defense lawyer, the victim is American of African descent. The defense lawyer strikes four jurors, prospective jurors who are Americans of African descent. If I understand correctly from your adversary, at that point the judge has a responsibility to pursue the problem. That is, sua sponte, he must do so. I haven't seen a case on that, but I'd like to have your response to the theory and why you believe that. Your Honor, that's the whole point of the Batson inquiry. Just because you strike someone that happens to be a particular race, that in and of itself can't be enough to trigger their inquiry. There has to be something going on. And so as an answer to your hypothetical, I want to use what happened here with jurors six and eight. And you could do this in any case. The judge goes through the panel, asks them all the same questions. You hear a little bit about their background. You hear about what maybe their sympathies or their problems might be. And then you could say, is there something that puts the district judge on notice? And let's look at six and eight here and talk about why there was nothing to worry about. So there's 12 jurors sitting there. There's four of them that are Americans of African descent. One, two, three, four, the defense lawyer knocks them off. Your position is the court doesn't have to look into that. If there were four, one, two, three, four, and all that was happened was they were stricken and there was nothing in the record? That's right. I think we need a comment from defense counsel along the lines of an inappropriate racial strike. I don't think just the strike in and of itself. The defense lawyer doesn't say anything. Prosecution doesn't say anything. Does the court have a responsibility sua sponte to look into it? I don't think without anything said. Now, court — Is there a case on that? No. I don't think so. There are other circumstances. Usually we have this first comment, which is I'm going to strike them all. Correct. I mean, is that a — is he joking? Is he — you know, what's happening? But then the judge explains how a panel is drawn. Right. Randomly. And everybody's happy with the panel at the beginning. And then they go into the peremptory strikes. Correct. So is there anything in these two jurors' responses that would justify saying, I'm worried that they're going to tilt against my client? Yes. Right. We know who they are because the court said he's doing this in order. So if you go and you read them in order, you get to number six. He's a retired Air Force service member, which would suggest sort of a law and order bent. This person had four children. His current hobby was working on family genealogy. He had just moved his elderly father out from Florida to live with him in Nevada, so he's taking care of a sympathetic elderly parent. And think of the victims in this case. The Sassers were the adult parents of the victim who took the money. And so this guy is going to have sympathy toward those victims because here he is caring for his father and thinking, can you imagine if people terrorized my father in this way? And, again, he has four kids similar to the family connection in the victims here. Turning to number eight, this woman was retired from the food and beverage industry. She had moved to Las Vegas for family connections to be with her brother. So, again, we have a potential issue. Is she going to have sympathy about this extortion against the family members? The victim who fled California, her sister went with her, so there's sort of a sibling issue. And also the food and beverage industry, I think, ties in because the victims in this case that lived in Las Vegas, their food and beverage store was burnt down in this arson. So the first one was actually burnt, and the second one they attempted to drive by, but they weren't able to access it. I think what you're suggesting is if the judge addressed this, I mean, he or would she, he would have concluded maybe that, well, there was a non-racial cause, right, a neutral cause. But let me back up to what I was asking earlier and ask my second question. So you said nobody made a batsman challenge, so nothing to rule on. And I said plain error. You said no. And the reason it's not plain error, because I assume your position is it was forfeited by the defendant because the defendant gave it up knowing what he was giving up. Is that your position, or what is your position? There's no plain error because there's no racial basis for striking these jurors. You can look at the record as a whole. No, the plain error is, so he's making, we'll say, the motion now for the first time on appeal. Right. So don't we review that motion? I mean, you're going to the merits of the motion, not what standard of review applies. I understand. So to back up. Is that what you're saying? Isn't that what you're saying? I mean, we assess his batsman claim now for plain error. What I'm asking you is isn't it possible that that was the batsman error was forfeited by the defendant because he gave it up at the trial? It's not, you know, it's worse than a waiver. He knew he was giving up the batsman claim, and he gave it up knowingly and voluntarily. That's right, Your Honor, because these are his own strikes he's challenging. So that's one problem. But let's talk about the other prongs of plain error review. There's no case that says this is how it works, and so it, by definition, can't be plain error. No cases, did you say? No. There's no case where a defendant strikes some jurors and then on appeal challenges his own strikes. Right. Now, moving to prejudice. He says in between, I'm not making a batsman challenge. Right, and he says there's not enough facts on this panel. He says this is a good panel. But that's part of my problem, you see. I mean, how you make a reverse, the Supreme Court said you can make a reverse error claim, right? Right. But it seems to me in that situation you're always a reverse error, a reverse batsman claim is that, you know, the defendant exercised, I'll call it an anti-batsman challenge, and then challenges it on appeal, right? His own action, as Judge McKeon was saying. And it's actually slightly different. So reverse batsman in this case would have been defendant strikes some African-American jurors and the government says reverse bats into that. Right. This is even something a little further one step removed from that. Well, the government's kind of trying to say that because the government doesn't want to get this case tipped. Right. Would there be a basis, since you can identify who these jurors are, if you were to determine that in the face of this murky event that the judge should have made a determination to go back and let the judge make that determination in the first place now? Your Honor, I think that would upset the person, the purpose of having the batsman challenge the way it is in the first place. And that goes to the prejudice prong and the substantial rights prong. And I know the idea for batsman is that you can fix it right away. Before trial, exactly. Or before the verdict and before trial. Before the jury is impaneled. Because if you let a defendant lie in wait with some sort of potential batsman challenge, any time after the jury is impaneled, the only potential remedy is a new trial. So you've already wasted those trial resources by letting the jury be impaneled, whether it's day one of trial or verdict or new trial motion or even on appeal. Any of those stages, you've already wasted that first jury. So that is why it's very important why you have to raise it before when you can still fix it, when there's still other jurors you can bring in, when you can make this record. Did invited error have any application here? Yes, because they were his strikes. So then you're kind of also down another path of analysis. And to the prejudice point, I think when we talked about jurors six and eight, there's no prejudice for the reasons I said. And the fourth prong of plain error, even assuming if this court found the first three, this court will only fix those errors if it's going to work some sort of substantial hardship and make the justice system look unfair. You see, the problem with, you know, I'm trying to get to the same place, too, but the problem with applying all these kinds of rules is that it is a notion, I guess as Justice Kennedy started it out, but that the purpose of the Batson Challenge is to protect the rights of the veneer and the jurors as well as the defendant, right? That's right. And so, you know, who's going to be there to protect the rights of the jurors if we apply these kinds of forfeiture and plain error and invited error rules? If there is such a thing as a reverse Batson, which I guess there is. A reverse reverse Batson maybe? Do we have a case that says that Batson is based upon protecting the rights of jurors? I thought it was protecting the rights of the person that is being discriminated against that's a party to the case. We do have cases. Mr. Osby cited one or two in his reply brief. It's an equal protection issue for the jurors, so the government's not disputing that in any way, and that's fine. But I think the problem here, and to your point, Judge Tshishima, about do we do this plain error forfeiture and so on, the issue here is the government made the inquiry to see if there was an issue. Defense counsel said there was not an issue, and we had enough on the record to look at those two jurors and say absolutely this could be trial strategy. Look at the two people that he struck. So this isn't so much a gotcha forfeiture moment in a strange procedural posture of someone challenging their own strikes on direct appeal. I agree with Judge McKeown, your point about this is an effective assistance and counsel claim that can be raised later, but I think if the court relies on the record here, you don't have to feel so much that this might be a forfeiture issue as opposed to there's simply nothing to go on. You can't make strikes, challenge your own strikes on appeal, and then claim that there could have been no strategy based on those jurors' answers. Well, I mean there could be a forfeiture. A forfeiture is a little different than waiver, and where there's an affirmative. Usually waiver just happens by accident often. But here where the lawyer basically says no, no, I'm not making a challenge, that seems to fall more in the forfeiture category. We ought to get back to Judge McKeown's first question. Isn't this a case where we have at least a claim of lawyer incompetence? I think he can surely raise that in a 2255. I won't comment on the merits because, of course, that's something that happens much later, but it could certainly be a strange question of why you would say there's not enough blacks on the jury and then I'm going to strike them. So there were several comments made that are internally inconsistent, and then he did make the strikes I think with trial strategy reason, but that can certainly be raised later. This case just isn't going away. Probably not, Your Honor. Thank you. Thank you.  One, Mr. Stein never said that this wasn't a Batson issue. The government raised the objection. While I would welcome this court saying that the court and the government have an obligation to protect the equal rights of the jurors and the defendant by sua sponte raising a Batson claim, and I think that should be the standard, the court doesn't have to find that standard to grant this appeal because the prosecutor says, and this is in the excerpts of records, just for the record purposes, Your Honor, earlier Mr. Stein had brought up Batson. Ultimately, all African-American jurors were struck from the jury. It was raised to the court's attention. The court and the prosecutor then had an obligation to protect the equal rights of the jurors and the defendant, and it didn't happen. There is no harmful error analysis when it comes to Batson. You can't say, well, just because the African-American jurors were stricken, the result of the trial would have been the same. No court has employed that analysis. And the Smith-Klein v. Abbott case, which is one of the most recent cases from this court, talking about Batson makes it really clear they even broadened the application of the equal protection rights of jurors to include sexual orientation. They didn't remand. They looked at the cold record, and in that case the person who had used drugs manufactured by the defendant had friends with HIV. The court said there is nothing in this record to establish that it was other than sexual orientation motivated and, therefore, it falls within Batson. In this case, there is nothing in the record to suggest that the sympathy for the victims was other than that based on race. The court and the government had an obligation, and I submit it should be a de novo review. What about the government's recitation of the factors that could influence the service of these two? I forgot their numbers, the jurors who were stricken. They had characteristics or life experiences which would make them sympathetic to the victim. Aside from race, right? As to juror number 8, because she's in the food and beverage industry, that makes her have sympathy for a victim whose father's popcorn store got burnt down. That's a stretch. Don't you think that's a race-neutral reason? No, and that wasn't a reason given. You're not very sympathetic. Well, I just disagree. I find that two people, two jurors who have a right to participate in the jury process were openly discriminated against in violation of their equal protection rights, and nobody did anything to stop it, and everybody was aware of it. Well, the government did make a comment. I think the government at least raised the issue. It can't do much more than raise the issue. Ultimately, aren't we going to have to decide that the judge, there was enough before the judge, the judge had to proceed? It seems to me the government raised it. Once it was raised, the court had an obligation to employ the bats in inquiry, which carries two parts. So your fault is not with the government. Your fault is with the judge. My fault is with both, because, well, the government should protect people's constitutional rights. Well, I understand. And the court, once aware of it, had an obligation. As a lawyer, you don't keep raising something before the judge, or you'll never try another case before that judge. But it seems to me that even setting that aside, the ultimate issue is whether the judge had a responsibility here based upon this case to proceed further. I agree that once it was raised, as we have cited in the record, whether the government wants to call that an objection or a challenge or not, the issue was raised and brought to the attention of the court, and then the bats in the Georgia v. McCollum. At that point, the court had an obligation to apply the three-part test and failed to apply Part 3 of the test, which subjects this case to a de novo review. And, again, there's no harmful error analysis. Let me ask a general question now. You may have said this earlier, but I think your position is that the actions of the then-Defense Counsel on this issue should be judged in the context of the Batson challenge and not in the context of ineffective assistance. Is that right? Yes. So if we get to ineffective assistance, it would be after we dispose of this Batson issue, whichever way it goes. Yes. My position is that, like they said in SmithKline, the cold record provides enough for this court to reverse on the Batson violation. And we don't have to address it again in the ineffective assistance. Not if it's reversed. Right. Or either way. Well, no. If the court — let me rephrase. If the court says we think this is more appropriately addressed in a 2255, then I would submit the issue is not raised because it hasn't been ruled on. Thank you. Thank you. Okay. Very unusual case in terms of its facts. Thank you both for the argument this morning. The case just argued of the United States v. Osby is submitted, and we're adjourned for the morning. All rise. This court's procession stands adjourned.
judges: Wallace, Tashima, McKeown